**A&J PRINTING, INC., Appellant,**

v.

**DSP ENTERPRISES, L.L.C. d/b/a Train Paper Company, Appellee.**

No. 05–04–00398–CV.

Court of Appeals of Texas, Dallas.

Dec. 22, 2004.

Rehearing Overruled Feb. 2, 2005.

Timothy J. Gargiulo, H.N. Cunningham, III, Roberts, Cunningham & Stripling, LLP, Dallas, for Appellant.

Michael A. Miller, Clark S. Butler, Brandie M. Koch, Miller & McCarthy, P.C., Dallas, for Appellee.

Before Justices MORRIS, WHITTINGTON, and O'NEILL.

## OPINION

Opinion by Justice WHITTINGTON.

A&J Printing, Inc. appeals the trial judge's order overruling its special appearance. In four issues, A&J challenges the jurisdiction of the trial court to enter the order and argues the special appearance should have been granted. Because the order denying the special appearance was entered when the trial court had plenary power, we overrule A&J's challenge to the authority of the court to enter the order. Nevertheless, we reverse the trial court's order denying the special appearance because A&J has no minimum contacts with Texas.

### BACKGROUND

Because A&J questions the trial court's authority to enter the order denying A&J's special appearance, we must review the procedural history of the case before reviewing the merits of A&J's special appearance. DSP filed suit on a sworn account on June 13, 2003. A&J filed its special appearance, which was heard on November 18, 2003. No written order on the special appearance was entered at that time. On November 24, 2003, the case was dismissed for want of prosecution. On January 26, 2004, DSP filed a motion to reinstate the case, alleging it did not receive notice of the dismissal order until January 23, 2004. On February 19, 2004, the trial judge held a hearing on the motion to reinstate. On February 23, 2004, the trial judge entered a written order denying the special appearance. The case was not reinstated by written order until April 5, 2004, after this appeal had been filed.

Regarding the merits of the special appearance, there is no indication that either party introduced evidence at the hearing; DSP apparently relied on its verified petition, a suit on sworn account, to establish A&J had minimum contacts with Texas. In its petition, DSP alleged A&J "has sufficient contacts with Texas that, under the Texas Long Arm Statute, it can be served with process by serving the Texas Secretary of State." DSP further alleged A&J "has done business in Texas." DSP also alleged in its petition that A&J is a Missouri corporation and does not maintain a regular place of business or registered agent in Texas. The affidavit supporting

the petition states, "Defendant ordered the items and/or services in the quantity and price stated on the attached account. Plaintiff delivered the goods and/or rendered services to Defendant. Defendant promised to pay the amount shown due on the account but failed to make payment." The invoices attached to the affidavit show DSP's address in Dallas. However, the "bill to" and "ship to" addresses are to A&J in Missouri, and the remittance address for payment is in Illinois. A&J did not file a verified denial in response to DSP's petition.

A&J filed a verified special appearance denying it had minimum contacts with Texas and an affidavit of its president detailing facts supporting A&J's lack of contacts with Texas. The affidavit provides (i) A&J was organized in and has its principal place of business in Missouri, (ii) it has no contacts with Texas, (iii) it does not have a registered agent in Texas and is not required to have one, (iv) it does not engage in business in Texas, (v) it has no bank accounts in Texas, (vi) it does not own or lease any real or personal property in Texas, (vii) no employee, representative or agent of A&J has traveled to Texas on behalf of A&J, (viii) and A&J has no employees, representatives, or agents in Texas. DSP did not respond to A&J's special appearance.

## Trial Court's Jurisdiction

■ A&J first contends the trial court had no jurisdiction to enter the order denying A&J's special appearance because the order was entered at a time when the case had been dismissed and had not yet been reinstated. The trial judge dismissed the case for want of prosecution on November 24, 2003. DSP filed its motion to reinstate the case on January 26, 2004. The parties agree DSP established by proper proof it did not receive notice of the order dismissing the case until January 23, 2004. (The written order reinstating the case recites January 24 as the date of notice, but all of DSP's proof was for notice on January 23). Because of this proof, the deadlines and plenary power periods all run from January 23, 2004. *See* Tex.R. Civ. P. 306a.4 (when party establishes it received notice more than twenty, but less than ninety, days after order of dismissal entered, post-judgment deadlines run from date party or attorney received notice or actual knowledge of signing of order); Tex.R. Civ. P. 165a.3 (motion to reinstate may be filed within period provided by rule 306a); *Moore Landrey, L.L.P. v. Hirsch & Westheimer, P.C.,* 126 S.W.3d 536, 540 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (based on prima facie showing notice of judgment received late, trial court's plenary power recommenced on date of notice).

Although the trial judge's reinstatement of the case by docket entry on February 19, 2004 did not suffice to reinstate the case, the April 5, 2004 reinstatement by written order was within the period of the trial court's plenary power. *See Emerald Oaks Hotel Conf. Center, Inc. v. Zardenetta,* 776 S.W.2d 577, 578 (Tex.1989) (trial court's oral pronouncement and docket entry reinstating a case not acceptable substitute for written order; where timely motion to reinstate filed, trial court retains plenary power for 105 days under rule 165a(3)). Although the case had not been reinstated by February 23, 2004, when the trial court entered the written order denying A&J's special appearance, the special appearance order was made within the plenary power period provided for in rule 165a(3). *See Emerald Oaks,* 776 S.W.2d at 578; Tex.R. Civ. P. 165a(3).

The order denying the special appearance was entered during the trial court's period of plenary power. A&J does not

cite any authority for the proposition that an order entered during the court's plenary power period is void if made after a judgment of dismissal but before the case is properly and timely reinstated. In the two cases A&J cites, the plenary power period had long since run when the trial judge attempted to enter orders sealing the court's records. *See Ashpole v. Millard,* 778 S.W.2d 169, 170–71 (Tex.App.-Houston [1st Dist.] 1989, no writ) (twelve years after suit dismissed by agreed order, court granted motion to seal record); *P.I.A. of Fort Worth, Inc. v. Sullivan,* 837 S.W.2d 844, 846 (Tex.App.-Fort Worth 1992, no writ) (trial judge's order to seal records was not made while trial court had plenary power). A&J cites language in *Ashpole* that "no further action may be had" in a case after dismissal. *See Ashpole,* 778 S.W.2d at 171. The language, however, refers to "voluntary" dismissal, and the next sentence in the opinion states, "Any further action must be taken by instituting a suit de novo, *unless there is a successful motion to reinstate.*" *Ashpole,* 778 S.W.2d at 171 (emphasis added). Here, the motion to reinstate had already been filed when the trial judge entered the order denying A&J's special appearance, and it was ultimately "successful," that is, granted in writing within the trial court's plenary power period. Therefore, *Ashpole* and *P.I.A.* are not controlling.

We have recognized that a trial judge may enter orders during the plenary power period. *See, e.g., Boyd v. Gillman Film Corp.,* 447 S.W.2d 759, 761 (Tex.Civ.App.-Dallas 1969, writ ref'd n.r.e.) ("Thus during the period of thirty days after the rendition of judgment ... the trial judge retains plenary power and jurisdiction to take whatever action he may deem desirable to change, alter or modify the judgment rendered."); *see also Thompson v. Gibbs,* 504 S.W.2d 630, 632 (Tex.Civ.App.-Dallas 1973, orig. proceeding) (trial judge

could set aside original judgment and grant new trial during plenary power period after overruling of motion for new trial by operation of law); *Ex parte Godeke,* 163 Tex. 387, 355 S.W.2d 701, 704 (Tex.1962) (case is still "pending" in trial court as long as judgment rendered in it remains subject to attack by motion for new trial or subject to judicial vacation or modification by the trial court under rule 329b). We hold the trial court had jurisdiction to enter the order denying A&J's special appearance. We overrule A&J's first issue.

### Special Appearance

In its second, third, and fourth issues, A&J argues it did not have minimum contacts with Texas, DSP's cause of action did not arise out of any alleged contacts with Texas, and it would be a violation of due process and substantial justice for this matter to be tried in Texas. We agree.

■ The standard for reviewing a trial judge's order denying a special appearance was set forth in *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 793–94 (Tex.2002). We review the trial court's factual findings for legal and factual sufficiency and review the trial court's legal conclusions de novo. *BMC Software,* 83 S.W.3d at 794. When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, we imply all facts necessary to support the judgment and supported by the evidence. *BMC Software,* 83 S.W.3d at 795.

■ Texas courts may assert personal jurisdiction over a nonresident defendant only if the Texas long-arm statute authorizes jurisdiction and the exercise of jurisdiction is consistent with federal and state due process standards. *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex.2002), *cert. denied,* 537 U.S. 1191, 123 S.Ct. 1271, 154 L.Ed.2d 1025 (2003)

(setting forth due process standards); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 17.041–45 (Vernon 1997 and Supp.2004–05) (long-arm jurisdiction in suit on business transaction or tort). Jurisdiction is proper if the nonresident defendant established "minimum contacts" with Texas and maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Am. Type*, 83 S.W.3d at 806 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The purpose of the minimum contacts analysis is to protect the defendant from being haled into court when its relationship with Texas is too attenuated to support jurisdiction. *Am. Type*, 83 S.W.3d at 806. Accordingly, we focus upon the defendant's activities and expectations and determine whether the defendant "purposefully availed" itself of the privilege of conducting activities in Texas, thus invoking the protections and benefits of our laws. *Am. Type*, 83 S.W.3d at 806 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). It is the quality and nature of the defendant's contacts, rather than their number, that is important in the minimum contacts analysis. *Am. Type*, 83 S.W.3d at 806.

■ A defendant's contacts with a forum may give rise to either specific or general jurisdiction. *Am. Type*, 83 S.W.3d at 806. DSP argues there is specific jurisdiction here. Two requirements must be met before a court may exercise specific jurisdiction over a nonresident defendant. First, the defendant's contacts with the forum must be purposeful, and second, the cause of action must arise from or relate to those contacts. *Am. Type*, 83 S.W.3d at 806. DSP bore the initial burden of establishing A&J's contacts with Texas. *See Am. Type*, 83 S.W.3d at 807. Upon filing a special appearance, A&J assumed the burden to negate all the bases of personal jurisdiction alleged by DSP. *See Am. Type*, 83 S.W.3d at 807.

■ DSP has not alleged any requisite minimum contacts between A&J and Texas other than its statement in its petition that A&J does business in Texas. DSP did not offer evidence that A&J has contacts with Texas. DSP argues its verified petition for its suit on account is sufficient to establish A&J's contacts because A&J did not file a sworn denial and therefore has admitted all facts pleaded. *See* TEX.R. CIV. P. 185 (petition supported by affidavit that claim is just and true, due, and all just and lawful offsets, payments, and credits have been allowed is "prima facie evidence thereof" unless party resisting claim files written denial under oath; without written denial under oath defendant may not deny "the claim, or any item therein"). Establishing the claim on the account, however, is not proof the account arose out of contacts with Texas. DSP's allegations are that A&J failed to pay for goods delivered, but there is no evidence A&J took any action in Texas in connection with that failure. *See, e.g., Biotrace Int'l, Inc. v. Wilwerding*, 937 S.W.2d 146, 147 (Tex.App.-Houston [1st Dist.] 1997, no writ) (allegation in petition that defendants made promise supported finding of purposeful action, but did not establish defendants made promise while in Texas; therefore, allegations in petition were insufficient to confer personal jurisdiction).

■ Further, the trial judge was not precluded from considering the evidence set forth in A&J's verified special appearance even though A&J did not file a sworn denial of DSP's suit on account. *See Rizk v. Fin. Guardian Ins. Agency, Inc.*, 584 S.W.2d 860, 863 (Tex.1979) (court notes affirmative defenses could be raised by defendant in sworn account action even in absence of verified denial under Rule 185).

As the court noted in *Rizk*, "Rule 185 is not a rule of substantive law but is a rule of procedure with regard to evidence necessary to establish a prima facie right of recovery. In the absence of a sworn denial meeting the requirements of the rule, the account is received as prima facie evidence as against a defendant sued thereon, and the defendant may not dispute the receipt of the items or services, or the correctness of the stated charges *although he may defend on other grounds.*" *Rizk*, 584 S.W.2d at 862 (citations omitted)(emphasis added). Although A&J may not dispute the correctness of the stated charges without a verified answer, it may challenge the court's jurisdiction by a special appearance. Courts have reviewed challenges to personal jurisdiction even where a plaintiff has obtained a default judgment in a suit on sworn account. *See, e.g., Seeley v. KCI USA, Inc.*, 100 S.W.3d 276, 278–80 (Tex.App.-San Antonio 2002, no pet.) (no-answer default judgment in suit on sworn account reversed and remanded where no personal jurisdiction over nonresident defendant).

In its verified special appearance, A&J set forth facts regarding its lack of contacts with Texas. DSP did not offer evidence to refute these facts or offer further evidence of A&J's purposeful contacts with Texas in its dealings with DSP. There is no allegation or evidence of any written contract between A&J and DSP. While DSP's invoices and affidavit are prima facie evidence A&J failed to pay the account, there is no connection between the invoices and Texas other than DSP's address. Without evidence of A&J's purposeful contacts with Texas, the trial court could not exercise specific personal jurisdiction over A&J. *See, e.g., Biotrace Int'l*, 937 S.W.2d at 147. We sustain A&J's second, third, and fourth issues.

We reverse the trial court's judgment and remand this cause for further proceedings.